IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MOHAMED ELHASSAN | § | |
| MOHAMED a/n/f for | § | |
| AHMED MOHAMED, a minor | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-02283-L |
| | § | |
| IRVING INDEPENDENT SCHOOL | § | |
| DISTRICT; DANIEL CUMMINGS, | § | |
| in his individual capacity, | § | |
| and CITY OF IRVING, | § | |
| | § | |
|     Defendants. | § | |

## DEFENDANT IRVING INDEPENDENT SCHOOL DISTRICT'S MOTION TO DISMISS AND MOTION TO STRIKE AND BRIEF IN SUPPORT

Kathryn E. Long
klong@thompsonhorton.com
State Bar No. 24041679

Carlos G. Lopez
clopez@thompsonhorton.com
State Bar No. 12562953

**THOMPSON & HORTON LLP**
Ross Tower
500 North Akard Street, Suite 2550
Dallas, Texas  75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**OF COUNSEL:**
Melisa E. Meyler
mmeyler@thompsonhorton.com
State Bar No. 24090122

**THOMPSON & HORTON LLP**
3200 Southwest Freeway, Suite 2000
Houston, Texas  77027
(713) 554-6767 – Telephone
(713) 583-8884 – Facsimile

**ATTORNEYS FOR DEFENDANT
IRVING INDEPENDENT SCHOOL DISTRICT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ................................................................................................. iii

OVERVIEW .......................................................................................................................... 1

SUMMARY OF PLAINTIFF'S ALLEGATIONS ................................................................ 2

STANDARD OF REVIEW ................................................................................................... 4

ARGUMENT AND AUTHORITIES .................................................................................... 5

    I.    The Complaint Does Not Allege a Plausible Title VI Claim ............................................ 5

        A.    Plaintiff's religious discrimination claims are not actionable under Title VI ........... 5

        B.    Irving ISD is not vicariously liable for discrimination by administrators. ............... 6

            1.    Overview of entity liability under Title VI ...................................................... 6

            2.    Plaintiff's allegations do not demonstrate improper motive ............................ 7

            3.    Plaintiff's allegations do not demonstrate deliberate indifference. .................. 8

            4.    Generic disciplinary data do not show intentional discrimination .................... 9

            5.    Plaintiff's allegations regarding middle school do not support a claim ............ 11

    II.    Plaintiff Fails to Describe Conduct Actionable Under 42 U.S.C. § 1983. ...................... 14

        A.    Overview of Section 1983 ...................................................................................... 14

        B.    Plaintiff does not state a 14th Amendment equal protection claim. ....................... 16

        C.    Plaintiff does not state a claim for entity liability ................................................... 20

MOTION TO STRIKE ......................................................................................................... 24

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Alexander v. Sandoval,*
  532 U.S. 275 (2001)..............................................................................6, 7, 11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...............................................................................5, 8, 17

*Barnes v. Gorman,*
  536 U.S. 181 (2002)......................................................................................7 n.3

*Beattie v. Madison Cnty. Sch. Dist.,*
  254 F.3d 595 (5th Cir. 2001) ................................................................................15

*Becerra v. Asher,*
  105 F.3d 1042 (5th Cir. 1997) ......................................................................14, 20

*Birabil v. Martinez,*
  Civ. Action No. 3:15-cv-2255-M, 2016 WL 4402259 (N.D. Tex. July 7, 2016)..............21, 22

*Bolton v. City of Dallas,*
  541 F.3d 545 (5th Cir. 2008) ................................................................................16

*Broaders v. Polk Cnty. Sch. Bd.,*
  No. 8:10–CV–2411–T–27EAJ, 2011 WL 2610185 (M.D. Fla. Apr. 19, 2011)....................17

*Bustos v. Martini Club Inc.,*
  599 F.3d 458 (5th Cir. 2010) ................................................................................20

*Carter v. Target Corp.,*
  541 F. App'x 413 (5th Cir. 2013) ................................................................................3 n.3

*Cesarani v. Graham,*
  25 F.3d 1044 (5th Cir. 1994) ................................................................................24

*City of Cleburne v. Cleburne Living Ctr.,*
  473 U.S. 432 (1985)................................................................................16

*City of Houston v. Piotrowski,*
  237 F.3d 567 (5th Cir. 2001) ...........................................................................14, 15, 16, 22

*City of St. Louis v. Prapotnik,*
  485 U.S. 112 (1988)................................................................................15

*Clayton v. Tate Cnty. Sch. Dist.,*
  560 Fed. App'x 293 (5th Cir. Mar. 25, 2014)..............................................................19, 23

*Coggin v. Longview Indep. Sch. Dist.*,
    337 F.3d 459 (5th Cir. 2003) ....................................................................23

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) ................................................................3 n.3

*Davis v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999)...........................................................................11, 12

*Dean v. Gladney*,
    621 F.2d 1331 (5th Cir. 1980) ..................................................................23

*Doe v. Dallas Indep. Sch. Dist.*,
    153 F.2d 211 (5th Cir. 1998) ....................................................................16

*Edwards v. High Desert State Prison*,
    No. 2:10–cv–3461, 2011 WL 1135910 (E.D. Cal. Mar. 25, 2011) .........25

*Fennell v. Marion Indep. Sch. Dist.*,
    804 F.3d 398 (5th Cir. 2015) ....................................................................17

*Florance v. Buchmeyer*,
    500 F. Supp. 2d 618 (N.D. Tex. 2007) .....................................................23

*Gabrielle M. v. Park Forest-Chicago Heights Sch. Dist.*,
    315 F.3d 817 (7th Cir. 2003) ....................................................................12

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998).....................................................................7, 8, 9, 13

*Gil Ramirez Group LLC v. Houston Indep. Sch. Dist.*,
    786 F.3d 400 (5th Cir. 2015) ..............................................................18, 19

*Gonzalez v. Ysleta Indep. Sch. Dist.*,
    996 F.2d 745 (5th Cir. 1993) ....................................................................20

*Groden v. City of Dallas*,
    826 F.3d 280 (5th Cir. 2016) ....................................................................15

*Harper v. Albert*,
    400 F.3d 1052 (7th Cir. 2005) ..................................................................23

*Harris v. U.S. Dep't of Justice*,
    680 F.2d 1109 (5th Cir. 1982) ..................................................................25

*Jett v. Dallas Indep. Sch. Dist.*,
    7 F.3d 1241 (5th Cir. 1993) ......................................................................15

*Johnson v. Rodriguez*,
110 F.3d 299 (5th Cir. 1997) ................................................................19

*Karasek v. Regents of the Univ. of Ca.*,
Case No. 15-cv-03717-WHO, 2016 WL 4036104 (N.D. Cal. July 28, 2016).........10

*Kelly v. Allen Indep. Sch. Dist.*,
602 Fed. App'x 949 (5th Cir. 2015) ......................................................10

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996) ................................................................25

*Milligan v. City of Slidell*,
226 F.3d 652 (5th Cir. 2000) ................................................................2

*Monell v. New York City Dep't of Social Servs.*,
436 U.S. 658 (1978)................................................................15, 20

*Muthukumar v. Univ. of Tex. at Dallas*,
2010 WL 5287530 (N.D. Tex. Dec. 27, 2010) ........................................7

*New Jersey v. T.L.O.*,
469 U.S. 325 (1985)................................................................2

*Pathria v. Univ. of Tex. Health Sci. Ctr.*,
531 Fed. App'x 454 (5th Cir. June 20, 2013) ................................6, 7, 8

*Personnel Administrator v. Feeney*,
442 U.S. 256 (1979)................................................................17

*Peterson v. City of Fort Worth*,
588 F.3d 838 (5th Cir. 2009) ................................................14, 21

*Plyler v. Doe*,
457 U.S. 202 (1982)................................................................16

*Price v. La. Dep't of Educ.*,
329 Fed. App'x 559 (5th Cir. July 21, 2009)........................................11

*Priester v. Lowndes Cnty.*,
354 F.3d 414 (5th Cir. 2004) ................................................................20

*Real v. Rescue Mission*,
No. 214–cv–729–FtM–38MRM, 2015 WL 4935627
(M.D. Fla., Aug. 15, 2015) ................................................................6

*Rivera v. Houston Indep. Sch. Dist.*,
349 F.3d 244 (5th Cir. 2003) ................................................14, 15

*Rosa H. v. San Elizario Indep. Sch. Dist.*,
    106 F.3d 648 (5th Cir. 1997) ........................................................................13

*Rosario de Leon v. Nat'l Coll. of Bus. & Tech.*,
    663 F. Supp. 2d 25 (D.P.R. 2009)................................................................6

*Rubio v. Turner Unif. Sch. Dist.*,
    475 F. Supp. 2d 1092 (D. Kan. 2007) ...................................................9, 13

*Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*,
    647 F.3d 156 (5th Cir. 2011) ........................................................................12

*Sorens v. Estate of Mohr*,
    No. Civ.A. H-05-1195, 2005 WL 1965957 (S.D. Tex. Aug. 16, 2005) ...................19

*Spight v. Davidson*,
    No. 3:14–mc–0793, 2014 WL 2811829 (M.D. Tenn. June 23, 2014)....................6

*Spiller v. City of Texas City*,
    130 F.3d 162 (5th Cir. 1997) ...............................................................15, 21

*Tafuto v. New Jersey Inst. of Tech.*,
    Civ. Action No. 10-452120, 2011 WL 3163240 (D.N.J. July 26, 2010)................17

*Turner v. Houston Indep. Sch. Dist.*,
    Civ. Action No. H-13-0867, 2013 WL 3353956 (S.D. Tex. 2013) .......................17

*U.S. v. Morrison*,
    529 U.S. 598 (2000)....................................................................................17

*Valle v. City of Houston*,
    613 F.3d 536 (5th Cir. 2010) .......................................................................21

*Vouchides v. Houston Comm. Coll.*,
    No. H-10-2559, 2011 WL 4592057 (S.D. Tex. Sept. 30, 2011)........................7, 9

*Wilson v. Garcia*,
    471 U.S. 261 (1985)....................................................................................14

**Statutes**

42 U.S.C. § 1983....................................................................................... *passim*

42 U.S.C. § 2000d..................................................................................... *passim*

FED. R. CIV. P. 5.2............................................................................................1

FED. R. CIV. P. 8.............................................................................................24

FED. R. CIV. P. 12(b)(6) ..................................................................................................1, 2, 5

FED. R. CIV. P. 12(f).............................................................................................................25

TEX. CODE. CRIM. P., art. 2.13 ............................................................................................23

TEX. CODE. CRIM. P., art. 14.01 ..........................................................................................23

TEX. CODE. CRIM. P., art. 14.03 ..........................................................................................23

TEX. EDUC. CODE § 11.151 ..................................................................................................15

TEX. EDUC. CODE § 11.1511 ...........................................................................................15, 23

TEX. EDUC. CODE § 11.202 ..................................................................................................23

TEX. EDUC. CODE § 37.081 ..................................................................................................23

Defendant Irving Independent School District ("Irving ISD") moves to dismiss the Plaintiff's claims pursuant to Rule 12(b)(6) of the Rules of Civil Procedure as follows:

## OVERVIEW

A.M. is a former student at MacArthur High School in Irving, Texas.[1]  A.M. alleges that he was subjected to discriminatory discipline on the basis of his race and religion.  He alleges that his high school principal acted pursuant to an unconstitutional policy or practice sanctioned by the Irving ISD Board of Trustees.  A.M. has asserted a claim under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, and a claim for an alleged violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.

Although Irving ISD vigorously denies Plaintiff's allegations regarding A.M.'s experiences at Irving ISD, even Plaintiff's version of events demonstrates that A.M. engaged in disruptive conduct and that school officials were well within their authority to question him and ultimately impose a temporary suspension pending a parent conference.  A.M. alleges that he brought a box to school containing "a 7 segment display, a pcb board, a 9 volt battery," "some wires," a "120-240 volt transformer," and a "button board."  (Orig. Compl. ¶ 54, ECF No. 1.) The device was disturbing enough that a teacher directed him to keep the device in his backpack—an instruction that A.M. promptly disobeyed in his English class when he removed the wired device from his backpack and showed it to another student.  The device beeped, distracting others, and caught the attention of the English teacher who, after seeing the device, asked A.M. "is that a bomb?"  (*Id.*)  She was concerned enough about potential disruption to confiscate the contraption.  Subsequently, when interviewed by the principal, A.M. declined to answer his questions, leading to a temporary suspension and the request for a parent conference.

---

[1]   Although the student's full name is contained in the caption of the lawsuit, the rules of civil procedure require parties to refer to minors by their initials.  Accordingly, this motion refers to the student by his initials.  *See* FED. R. CIV. P. 5.2.

Public schools have a "substantial interest" in "maintaining discipline in the classroom and on school grounds." *New Jersey v. T.L.O.*, 469 U.S. 325, 339 (1985). "Maintaining order in the classroom has never been easy, but in recent years, school disorder has often taken particularly ugly forms." *Id.* "Even in schools that have been spared the most severe disciplinary problems, the preservation of order and a proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult." *Id.* at 340. The public school's substantial interest in maintaining discipline and order means that schools need not wait for the occurrence of actual crime or disruption before intervening. *See generally Milligan v. City of Slidell*, 226 F.3d 652, 655-56 (5th Cir. 2000).

Here, Plaintiff has failed to state a plausible claim because there are no allegations giving rise to any reasonable inference that A.M. was questioned or disciplined *because* of his race or religion. He also has failed to plead other essential facts in support of plausible claim. In particular, Plaintiff's well-pleaded allegations, assumed to be true, fail to demonstrate that Irving ISD maintained an unconstitutional custom, practice, or policy of disciplining students because of their race or religion—a mandatory requirement under 42 U.S.C. § 1983. Irving ISD moves to dismiss all claims.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

The following summary is based on the Plaintiff's allegations, which, under Rule 12(b)(6), are assumed to be true for purposes of this motion.

A.M. alleges that he built a device that included "a 7 segment display, a pcb board, a 9 volt battery," "some wires," a "120-240 volt transformer," a "button board." (ECF No. 1 ¶ 53.) He calls this homemade device a clock in a pencil box. (*Id.*) On September 14, 2015, A.M.

showed the device to a teacher who advised A.M. to keep it in his backpack.  (*Id.* ¶ 54.)  Later that day, during 4th period English, A.M. defied the teacher's instruction by showing the device to another student during class.  (*Id.*)  The device made a beeping noise, which caught the attention of the English teacher, Erin West.  (*Id.*)  After class, A.M. showed the device to Ms. West, who, upon seeing it, asked "is that a bomb?"  (*Id.*)  A.M. states that he told her it was an alarm clock.  Ms. West took the contraption from him.  (*Id.*)

A.M. alleges that "several hours" after Ms. West confiscated the device, Principal Daniel Cummings and a City of Irving police officer escorted him from class to a room with "four more Irving police officers" and a school counselor.  (ECF No. 1 ¶ 56.)  A.M. alleges that he was questioned for "almost an hour and a half by the Irving police."  (*Id.* ¶ 57.)  During the questioning, Principal Cummings told A.M. to write a statement and allegedly "threatened to expel him if he did not."  (*Id.* ¶ 59.)  A.M. alleges that he wrote that he made an alarm clock and that the authorities thought it was a bomb.  (*Id.*)  A.M.'s statement contains several lines.[2] (Defs.' Joint Appendix ("J.A.") at 3, Ex. A.)  The first line is scratched out: "[A.M.] has refused to write down his intent for making device."  (*Id.*)  A.M. then wrote:  "I Built a Clock. Cops think Its a Bomb."  (*Id.*)  The statement concludes with: "I asked [A.M.] again 'What was your intent for building the clock?'  [A.M.] still will not tell me his intent for building a clock and bringing it to school."  (*Id.*)  The statement was prepared around 3:01 p.m.  (*Id.*)

That evening, an assistant principal, Patrick Smith, telephoned A.M.'s father and sent him an email stating that A.M. would be suspended for three days.   (ECF No. 1 ¶ 68; J.A. at 5, Ex. B.)  The email stated that a parent conference would be scheduled.  (*Id.*)

---

[2]  The Court may consider documents referenced in the pleadings if those documents provide information central to the claims and helpful in determining whether a claim has been stated.  *See generally Carter v. Target Corp.,* 541 Fed. App'x 413, 416-17 (5th Cir. 2013) (unreported) (citing *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000)).

A.M. alleges that the Irving police handcuffed him and arrested him, but that "the Irving police eventually dropped the charges." (ECF No. 1 ¶¶ 57, 60, 68.)  The Complaint does not allege that Irving ISD or its personnel made the decision to arrest or to charge A.M.

Plaintiff alleges that Irving ISD has a "history of race struggles" and a "history of discrimination against Muslims in Texas curriculum and schools." (*Id*. ¶ 9.)  Plaintiff alleges that state data show racial disparities in student discipline. (*Id*. ¶¶ 15-22.)  Eight years ago, the District's then-superintendent entered into a "memorandum of understanding" with a parent group in which the District agreed to review discipline data.  The District hired a consultant to provide professional development to teachers regarding engagement of African-American students. (*Id*. ¶¶ 24-25.)  The consultant allegedly opined that there was "dysconcsious [sic] racism" in which individuals "knowingly or unknowingly" discriminate. (*Id*. ¶ 28.)  Plaintiff alleges that the school board received the consultant's report and determined that the consultant had exceeded the scope of his assignment and had failed to use proper methodologies. (*Id*. ¶ 30.)

The Complaint further alleges that, in 2011, a candidate for school board ran against a black incumbent and allegedly made racially charged statements. (*Id*. ¶ 29.)  The candidate, Steven Jones, won and allegedly encouraged an investigation into alleged Islamic bias in the curriculum.  The Complaint alleges that, in 2013, Dr. Jones was "censured" for purportedly threatening to fire those who supported the prior superintendent and for saying that "Spanish accents had to go" and that schools needed to be "English only." (*Id*. ¶¶ 31-32.)  Plaintiff alleges that school board elections resulted in "like-minded" board members being elected. (*Id*. ¶ 34.)

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff's complaint must provide sufficient factual allegations that, when assumed to be true, state a claim for relief that

"is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. When a complaint pleads acts that are "merely consistent with" a defendant's liability, "it 'stops short of the line between possibility and plausibility.'" *Id*. (citations omitted). Although the court must accept well-pleaded facts as true, conclusory allegations are not entitled to a presumption of truth. *Id.* at 678-79. Other than Principal Cummings's and Ms. West's actions on September 14, 2015, the Complaint contains no allegations regarding actions by the school district on that day.

## ARGUMENT AND AUTHORITIES

### I.      The Complaint Does Not Allege a Plausible Title VI Claim.

Plaintiff claims that alleged "ongoing discrimination" within Irving ISD on the basis of race and religion (Muslim) caused the purportedly unlawful discipline of A.M. on September 14, 2015.   (ECF No. 1 ¶ 106.)   Plaintiff's claims fail because religious discrimination is not actionable under Title VI and because, as a matter of law, Irving ISD cannot be held vicariously liable for discriminatory acts of school employees.  Plaintiff's allegations fail to state a plausible claim under Title VI.

#### A.      Plaintiff's religious discrimination claims are not actionable under Title VI.

Title VI provides that "[n]o person in the United States shall, on the ground of ***race, color, or national origin***, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d (emphasis added).   The statute on its face does not prohibit discrimination on the basis of religion; therefore, these claims are not actionable under Title VI.  *See Rosario de Leon v. Nat'l Coll. of Bus. & Tech.*, 663 F. Supp. 2d 25, 34 (D.P.R. 2009); *Spight v. Davidson*,

No. 3:14–mc–0793, 2014 WL 2811829, at *1 (M.D. Tenn. June 23, 2014); *Real v. Rescue Mission*, No. 214–cv–729–FtM–38MRM, 2015 WL 4935627, at *4 (M.D. Fla. Aug. 15, 2015). Lower courts may not recognize a cause of action when "a statute has not created them." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (plaintiff could not sue to enforce Title VI regulations which addressed conduct not prohibited by the statutory language of Title VI) (internal quotations omitted); *see, e.g., Pathria v. Univ. of Tex. Health Sci. Ctr.*, 531 Fed. App'x 454 (5th Cir. June 20, 2013) (allegation that supervisor said he could get plaintiff's visa cancelled and send him "back to India" suggested discrimination on the basis of immigration status, not national origin, and therefore was not actionable under Title VI).

Accordingly, because Title VI does not proscribe discrimination on the basis of religion, any Title VI claim based on religious discrimination must be dismissed.

### B.  Irving ISD is not vicariously liable for discrimination by administrators.

Although Irving ISD denies that A.M. was subjected to race-based discrimination by District employees, even if his allegations were assumed to be true, this claim fails on its face. As shown below, the cause of action under Title VI is a limited one, and schools may not be held vicariously liable for the independent discriminatory acts of school employees.

### 1.  Overview of entity liability under Title VI

To state a claim for damages under Title VI, the plaintiff must establish intentional discrimination. *See Alexander*, 532 U.S. at 281. A complaint that does not set forth "specific allegations of acts that were taken with discriminatory intent" does not state a claim. *Muthukumar v. Univ. of Tex. at Dallas*, 2010 WL 5287530, at *5 (N.D. Tex., Dec. 27, 2010); *see, e.g., Pathria*, 531 Fed. App'x at *456 (affirming dismissal because there were no allegations that, if true, would create a reasonable inference that the supervisor's conduct "was motivated by [plaintiff's] national origin").

Moreover, even if an employee discriminates against a student, the nature of this federal civil rights statute requires that the entity/employer have notice before it may be held vicariously liable for the discrimination. *See Vouchides*, 2011 WL 4592057, *5 (citation omitted). Congress adopted Title VI pursuant to its authority under the Spending Clause, which necessarily limits the remedies that are available for violations. *See generally Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286-87 (1998).[3] When Congress acts pursuant to its spending power, the offer of federal funds is in the nature of a contract: in return for federal funds, the funding recipient agrees to certain conditions. *Id.* This "contractual nature has implications" for the scope of available remedies. *Id.* at 287. The recipient of federal funds must have notice that it could be liable for a monetary award. *Id.*

In *Gebser,* the Court held that, in cases that do not involve an official policy, damages are not available unless an "appropriate person"—an official authorized to institute corrective measures—had "actual knowledge" of the discrimination and responded with "deliberate indifference." *Id.* at 290. The Court imposed a high standard precisely to avoid the risk that the school "would be liable in damages not for its own official decision but instead for its employees' independent actions." *Id. Gebser* expressly rejected liability standards based on negligence, constructive notice, and *respondeat superior. Id.* at 285-88. Thus, in *Gebser*, the Court held that a Texas school district could not be held liable in damages for a teacher's sexual molestation of a child because no one in authority knew about the molestation. *Id.* at 291-92.

### 2.   Plaintiff's allegations do not demonstrate improper motive.

As pleaded, the Plaintiff's Title VI claim is based on the events of September 14, 2015. (ECF No. 1 ¶ 106.)   However, Plaintiff's allegations about these events do not state a plausible

---

[3]   Although *Gebser* addressed Title IX rather than Title VI, the two statutes have similar wording and "operate in the same manner." *Gebser*, 524 U.S. at 287.   Therefore, the Court has interpreted the two statutes "consistently." *See Barnes v. Gorman*, 536 U.S. 181,185 (2002).

claim for relief.  There are *no allegations* giving rise to any inference that Principal Cummings acted with a discriminatory motive.  This deficiency alone warrants dismissal.  *See generally Pathria*, 531 Fed. App'x at *456 (affirming dismissal because there were no allegations that, if true, would create a reasonable inference that the supervisor's conduct "was motivated by [plaintiff's] national origin").  There are no allegations that Principal Cummings made any discriminatory comments or that he had any prior negative dealings with A.M.  Further, the Plaintiff pleads no facts that similarly situated students engaging in similar conduct were treated differently.  There are no facts suggesting that the three-day suspension was based on A.M.'s membership in a protected class.  Likewise, to the extent that Plaintiff seeks to impose liability based on Ms. West's conduct, Plaintiff again fails to state a claim because there are similarly no allegations that Ms. West took any action because of A.M.'s race.  Instead, the allegations in the Complaint indicate that all actions taken by Ms. West resulted from her hearing and seeing the device.  Further, there are no allegations that she treated A.M. differently than students in similar disciplinary situations.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

### 3.  Plaintiff's allegations do not demonstrate deliberate indifference.

Moreover, even if one were to assume for argument's sake that some District employee had an improper motive, Irving ISD may not be held vicariously liable for that employee's actions.  Just as the school district in *Gebser* could not be held directly liable for the sexually harassing behavior of a teacher, Irving ISD may not be held directly liable for the allegedly discriminatory decision of a principal or a teacher.  There are no allegations that any "appropriate person" was aware of unlawful discrimination by Principal Cummings or anyone else and responded with "deliberate indifference."

Recent decisions are instructive.  In *Vouchides v. Houston Community College,* No. H-10-2559, 2011 WL 4592057, at *2 (S.D. Tex. Sept. 30, 2011), for example, a college police officer used force against a student and made threats while saying "you look like a terrorist." The court held that the college defendant could not be held liable for the officer's alleged discrimination.  *Id.* at *6.  Similarly, in *Rubio v. Turner Unified School District*, 475 F. Supp. 2d 1092, 1099 (D. Kan. 2007), the court held that a school district could not be liable for the actions of a principal who allegedly prohibited students from speaking Spanish because the school district did not know that the principal had engaged in discriminatory behavior.  These rulings flow from *Gebser* itself, which expressly held that vicarious liability is prohibited. *Gebser*, 524 U.S. at 285-88.  Like Title IX, Title VI contains no "agency" provision that would make the institution liable for the wrongful acts of its agents.  *Id.*, 524 U.S. at 283.  Accordingly, in these cases, it is irrelevant that the employee himself may be aware of his own improper discriminatory motive.  "[T]he knowledge of *the wrongdoer* is not pertinent to the analysis." *Gebser*, 524 U.S. at 291 (emphasis added).

### 4.   Generic disciplinary data do not show intentional discrimination.

Nor may Plaintiff dodge the "actual knowledge" requirement by citing Texas Education Agency ("TEA") data or by referencing a consultant's report from six years ago.  Plaintiff claims that the TEA "stats" show racial disparity in student discipline.  He claims further that the consultant's report opined about "dysconcsious [sic] racism" in which individuals "knowingly or unknowingly" discriminate.[4]  (ECF No. 1 ¶¶ 15-22, 28, 101, 104.)  Even if the Court assumes the accuracy of the TEA data, Plaintiff cites the data without any explanation or context.

---

[4]   According to the Complaint, the consultant found that several students on an unidentified campus perceived that they could not use the restroom when white students could. (ECF No. 1 ¶ 102.)  The school board allegedly received this report and determined that the consultant had exceeded the scope of his assignment and had failed to use proper methodologies.  (*Id.* ¶ 30.)

Importantly, the data do not purport to show the actual occurrence of intentional discrimination or even complaints about discrimination. The data do not establish that Irving ISD's leadership knew about alleged intentional discrimination at MacArthur High School or any specific unlawful disciplinary practice.

Plaintiff's reliance on raw disciplinary data ignores the fact that damages are available only for intentional discrimination. To impute the actions of others to Irving ISD there must be "actual knowledge" of the alleged discriminatory conduct at issue. Constructive notice of a general problem "will not suffice." *Kelly v. Allen Indep. Sch. Dist.*, 602 Fed. App'x 949, 953 (5th Cir. 2015) (unreported). An argument similar to Plaintiff's was rejected in *Karasek v. Regents of the University of California*, Case No. 15-cv-03717-WHO, 2016 WL 4036104, at *9-10 (N.D. Cal. July 28, 2016), in which students in a Title IX action cited a state auditor's report to establish that their university had prior knowledge of a problem in the school's handling of sexual assault claims. The court held that "this level of awareness or deficiency of response with respect to the general problem of sexual violence" was insufficient as a matter of law to establish actual knowledge or deliberate indifference of sexual assault. *Id.* Similarly, in this case, even if the data could be interpreted to suggest a deficiency in the disciplinary process, it does not establish Irving ISD's actual knowledge of or deliberate indifference to the intentional discrimination alleged by the Plaintiff.

In effect, Plaintiff's Title VI claim is based on an disparate impact theory that certain disciplinary practices had a negative effect on African-American students. However, disparate impact, by definition, lacks an intent requirement. Title VI, in contrast, requires the element of intent. *See Alexander*, 532 U.S. at 280. Thus, in *Price v. Louisiana Department of Education*, 329 Fed. App'x 559 (5th Cir. July 21, 2009), the court rejected a Title VI claim brought by

parents who claimed that their children were subjected to racial harassment. Although the plaintiffs alleged that "defendants improperly hired, trained, or monitored their employees in order to prevent discrimination, and failed to inspect and discover instances of discrimination," their complaint did not contain a single allegation of discriminatory intent on the part of the *institutional* defendants.

### 5. Plaintiff's allegations regarding middle school do not support a claim.

Although the focus of Plaintiff's Title VI claim is September 14, 2015, to the extent that the Plaintiff seeks to base a claim on his middle school years, this claim, too, would fail. A.M. alleges that other students called him "Sausage Boy and Bacon Boy" and "made fun of him for his religion." (ECF No. 1 ¶ 42.) These bare allegations lack any context and fail to state a claim as a matter of law.

The Supreme Court has held that a school district may not be held liable in damages for student-to-student harassment except in "certain limited circumstances." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999). Under *Davis*, the student must have suffered harassment "so severe, pervasive, and objectively offensive that it can be said to deprive the victim[ ] of access to the educational opportunities or benefits provided by the school." *Id.* at 650. The school must exercise "*substantial control* over both the harasser *and* the context in which the known harassment occurs." *Id.* at 645 (emphasis added). Next, a school official with authority to take corrective action must have had "actual knowledge" of the peer harassment and responded with "deliberate indifference." *Id.* at 650-51. The deliberate indifference must cause the student to be subjected to further harassment. *Id.* at 644-45.

As pleaded, A.M.'s allegations are deficient because he does not allege (i) that the incidents occurred at school or in a context under the control of the District, (ii) facts indicating that the harassment was severe and pervasive and interfered with his educational opportunities,

(iii) that he reported the incidents, or (iv) that the school failed to address them.  *See, e.g.,*

*Gabrielle M. v. Park Forest-Chicago Heights Sch. Dist.*, 315 F.3d 817, 822 (7th Cir. 2003)

(child's vague statement failed to explain "when, where, or how often alleged conduct occurred

and whether it was reported"); *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647

F.3d 156, 167 (5th Cir. 2011) ("the harassment must be more than the sort of teasing and

bullying that generally takes place in school").   As a matter of law, Plaintiff's allegations

regarding name-calling by other students are insufficient to state a claim under *Davis*.

A.M. also complains about Assistant Principal Nguyen at A.M.'s middle school.  A.M.

alleges that, while in sixth grade (2012-2013), he would leave the cafeteria to go pray during

lunch but that, one day, Assistant Principal Nguyen told him to "go back and eat." (ECF No. 1

¶ 46.)  A.M. alleges that he had to present a permission slip from his parent to leave the cafeteria

to pray.  (*Id.*)  These allegations, assumed to be true under Rule (12)(b)(6), relates to religious

discrimination, which is not actionable under Title VI.[5]

A.M. further complains that, after the sixth-grade cafeteria incident, Assistant Principal

Nguyen and unnamed teachers began disciplining A.M. for "horseplay" and assigning him

detentions and in-school suspensions.  (ECF No. 1 ¶ 48.)  He also alleges that he was unfairly

disciplined for an incident in which he poked a student with a pencil and forced soap down

another kid's throat.   (*Id.*)   However, there are *no* factual allegations giving rise to any

reasonable inference that any discipline was based on race, and there are no allegations that the

Plaintiff reported any discrimination to the principal or anyone else in authority during sixth

grade.  As previously noted, under *Gebser*, a school district cannot be held vicariously liable for

the allegedly discriminatory acts of assistant principals and teachers.  *See Rubio*, 475 F. Supp. 2d

---

[5]   For this reason, Plaintiff's allegation that he is not aware of a Christian student needing permission "before they were allowed to pray in school" is irrelevant and off base.  Moreover, the question presented by the lawsuit is not students wanting "to pray in school" but students wanting to leave the cafeteria.

at 1099. Therefore, even assuming *arguendo* that some employees engaged in discrimination during A.M.'s sixth-grade year, Irving ISD is not liable for it.

A.M. also alleges that, in 8th grade (2014-2015), he was unfairly disciplined by Assistant Principal Nguyen following an alleged choking incident with another student.  Plaintiff alleges that the parents filed a formal "appeal," that the disciplinary consequence for A.M. was dropped, and that discipline from Assistant Principal Nguyen "ceased."  (ECF No. 1 ¶¶ 49-50.)  As a matter of law, any claim based on these allegations fails because there are no allegations that the underlying discipline was motivated by unlawful discrimination *and* because the allegations, even if true, do not establish "deliberate indifference."  Plaintiff admits that the discipline was dropped and that further discipline from the assistant principal "ceased." "If the conduct has ceased by the time a supervisory employee of the sort we describe here learns of it, there is no liability in a private suit for that conduct based on some personal failure to take 'proper remedial action' thereafter." *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 661 (5th Cir. 1997).

Finally, Plaintiff alleges that a teacher allegedly heard Assistant Principal Nguyen say that "his Asian children did not give him any problems" and that he urged the black and Hispanic students "to be like his children."  (ECF No. 1 ¶ 47.)  According to the complaint, this alleged comment was made in May 2015 at the end of A.M.'s 8th grade year and *did not involve A.M.* The allegation does not pertain to any discrimination against A.M. and does not give rise to any inference that A.M.'s prior disciplinary decisions were discriminatory.  Moreover, according to the complaint, all alleged discrimination against A.M. "ceased" after his earlier appeal.  (ECF No. 1 ¶ 50.)

For the foregoing reasons, Irving ISD moves for dismissal of Plaintiff's Title VI claims.

13

**II.      Plaintiff Fails to Describe Conduct Actionable Under 42 U.S.C. § 1983.**

Plaintiff seeks damages for alleged violations of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.  A.M.'s sole constitutional claim against Irving ISD is an alleged violation of the Equal Protection Clause.  As shown below, Plaintiff has failed to allege essential facts in support of a plausible claim.

**A.      Overview of Section 1983**

Section 1983 creates no substantive rights, but merely provides a damages remedy for the deprivation of existing federal constitutional or statutory rights.  *See Wilson v. Garcia*, 471 U.S. 261, 278 (1985).  The existence of a constitutional violation is a "threshold" issue and may be determined before analyzing whether the entity may be held responsible for the violation. *Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009).  "It necessarily follows that, without an underlying *constitutional* violation, there can be no § 1983 liability imposed on the school district or the individual supervisors." *Becerra v. Asher*, 105 F.3d 1042, 1047-48 (5th Cir. 1997) (emphasis in original).

The standard for suing a school district under Section 1983 is rigorous.  In particular, *respondeat superior* liability is absolutely prohibited.  *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).  A local government may not be held liable merely because its employees violate the Constitution.  *See City of Houston v. Piotrowski*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Under *Monell*, a plaintiff must show that:

(i)      the constitutional violation was caused as the direct result of the execution of an official "custom" or "policy" within the meaning of *Monell*;

(ii)      the custom or policy was approved or sanctioned by the entity's "final policymaker"; and

14

      (iii)     the final policymaker acted with "deliberate difference" and the custom or policy was the "moving force" behind the violation.

*Piotrowski*, 237 F.3d at 578. The unconstitutional conduct must be "directly attributable" to the final policymaker. *Rivera*, 349 F.3d at 247 (explaining that the plaintiff must do more than identify misconduct by a school employee).

A "custom" or "policy" is a persistent, widespread practice that has become so common and well-settled as to fairly represent official municipal policy. *Id.* at 579. When prior unconstitutional incidents are used to show a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Id.* (citation omitted).

The identification of the "final policymaker" is a question of state law. *See City of St. Louis v. Prapotnik*, 485 U.S. 112, 124 (1988). The "final policymaker" is the official or officials whose decisions are unconstrained by policies imposed by a higher authority. *See generally Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 603 (5th Cir. 2001). A plaintiff must plead "facts which establish that the challenged policy was promulgated or ratified by the city's policymaker." *Groden v. City of Dallas*, 826 F.3d 280, 285 (5th Cir. 2016). Conclusory allegations of municipal liability are insufficient to state a claim under Section 1983. *See Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).

Under Texas law, the final policy-making authority for a school district is the district's board of trustees. *See* TEX. EDUC. CODE §§ 11.151 & 11.1511; *see generally Rivera,* 349 F.3d at 247 (analyzing Texas Education Code). Consequently, it is well established that Texas school boards are not liable for the unconstitutional acts of even their most high-ranking employees, including superintendents and principals, because the district's employees ultimately are

constrained by the policies set by the school board.  *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d

1241 (5th Cir. 1993).  The Supreme Court has "cautioned" that a "'court would not be justified

in assuming that municipal policymaking authority lies somewhere other than where the

applicable law purports to put it.'"  *Doe v. Dallas Indep. Sch. Dist.*, 153 F.2d 211, 216 (5th Cir.

1998) (quotation omitted); *see also Bolton v. City of Dallas*, 541 F.3d 545, 551 (5th Cir. 2008)

("When an official's discretionary decisions are constrained by policies not of that official's

making, those policies, rather than the subordinate's departures from them, are the act of the

municipality") (citation omitted).

Accordingly, in this case, to state a claim, the Plaintiff must allege specific facts showing

that Irving ISD's school board, as a body corporate, actually adopted an unconstitutional policy

or otherwise knew about or acquiesced in a permanent and deeply imbedded, abusive, and

unconstitutional practice.  *See Piotrowski*, 237 F.3d at 578-79.

### B.      Plaintiff does not state a 14th Amendment equal protection claim.

The Equal Protection Clause requires that similarly situated persons be treated alike.  *See*

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).   If the state disadvantages a

"suspect class" or impinges upon a fundamental right, the decision is subject to strict scrutiny.

*Id*. Classifications based on race, national origin, or alienage are suspect categories and are

subject to strict scrutiny.  *Id.* at 440.  Rights are fundamental if they have their source, explicitly

or implicitly, in the Constitution.  *Plyler v. Doe*, 457 U.S. 202, 217 n. 15 (1982).   Equal

protection claims require invidious and purposeful discrimination.  *See U.S. v. Morrison*, 529

U.S. 598 (2000); *Personnel Administrator v. Feeney*, 442U.S. 256, 279 (1979).

The plaintiff must show that he received treatment different from that received by

similarly situated individuals and that the unequal treatment stemmed from a discriminatory

16

intent.  *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015).  The plaintiff must show that the official took a discriminatory action "because of, not merely in spite of, the action's adverse effects upon an identifiable group."  *Iqbal*, 556 U.S. at 676 (citation omitted).  Conclusory assertions of discriminatory intent are insufficient to state a claim.  *Id.*  For example, in *Iqbal*, 556 U.S. at 669-70, the Supreme Court held that a plaintiff's allegation that the defendants had subjected Arab Muslims to harsh conditions of confinement after 9/11/01 was conclusory.  Instead, a plaintiff "must plead sufficient factual material" to show that the defendants took action "for the purpose of discrimination on account" of the plaintiff's protected status.  *Id.* at 677.  The factual content must be sufficient to "nudg[e]" the claim of purposeful discrimination "across the line from conceivable to plausible."  *Id*. at 680.

Here, A.M. has not alleged that any Irving ISD school official treated him differently from any other similarly situated student involved in similar misconduct.  Therefore, he has failed to state a claim.  *See, e.g., Broaders v. Polk Cnty. Sch. Bd.*, No. 8:10–CV–2411–T–27EAJ, 2011 WL 2610185, at *5 (M.D. Fla. Apr. 19, 2011) (dismissing equal protection claim where student "failed to allege sufficient facts showing that Defendant's policies treat minority and disabled students differently from other students"); *Tafuto v. New Jersey Inst. of Tech.*, Civ. Action No. 10-452120, 2011 WL 3163240, at *5 (D.N.J. July 26, 2010) (dismissing equal protection claim where student's allegations did not show that other students were similarly situated); *Turner v. Houston Indep. Sch. Dist.*, Civ. Action No. H-13-0867, 2013 WL 3353956, at *3 (S.D. Tex. July 3, 2013) (dismissing equal protection claim; plaintiff failed to identify any non-disabled student was treated differently).  In the Complaint, the Plaintiff does not allege any facts demonstrating differential treatment or discriminatory intent by campus-level decision-

17

makers based on a protected status.[6]  Plaintiff's own version of events demonstrates that he engaged in distracting and inappropriate behavior.  One teacher told A.M. to keep the device in his backpack, an instruction that A.M. admittedly disobeyed; the device beeped during English class and caught the attention of that teacher; and, upon seeing the device, the English teacher allegedly inquired whether the device was a bomb.  (ECF No. 1 ¶ 54.)  The English teacher was concerned enough to confiscate the device.  Indeed, had the device not been confiscated during fourth period, A.M. could have taken the device into the crowded school cafeteria where hundreds of students would be eating lunch.  Although A.M. disputes the reasonableness of his discipline, the salient question under the Equal Protection Clause is not the fairness of the disciplinary decision but whether he was treated differently from similarly situated students.  No allegations support any inference of disparate treatment, and no allegations show that the discipline was motivated by his race or religion.

Likewise, the Plaintiff cannot establish intentional discrimination as to A.M. by referring to TEA reports regarding past "racial disparity" in student discipline or by citing a consultant's report from six years ago regarding "dysconcsious [sic] racism" in which individuals "knowingly *or unknowingly*" discriminate.  (ECF No. 1 ¶¶ 15-22, 101, 104, emphasis added.)  Awareness of such information does not establish intent to discriminate.  The Fifth Circuit rejected a similar argument in *Gil Ramirez Group LLC v. Houston Independent School District*, 786 F.3d 400, 419 (5th Cir. 2015), in which the plaintiff argued that it was required to show only "'that the decisionmakers were aware' of potential harm to disfavored individuals."  *Id*.  The court explained that discriminatory purpose "implies more than intent as volition or intent as awareness of consequences."  *Id.*

---

[6]   Irving ISD also incorporates by reference the arguments and authorities cited in Defendant Daniel Cummings's Motion to Dismiss and Motion to Strike and Brief in Support.

Plaintiff in essence is arguing that some unidentified practice was causing a disparate impact on certain student groups.  However, as a matter of law, disparate impact discrimination will not support an equal protection claim.  *See Clayton v. Tate Cnty. Sch. Dist.*, 560 Fed. App'x 293, 297-98 (5th Cir. Mar. 25, 2014) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)).  If disparate impact claims were allowed, then "any law could be challenged on Equal Protection grounds by whomever it has negatively impacted."  *Sorens v. Estate of Mohr*, No. Civ.A. H-05-1195, 2005 WL 1965957, at *10 (S.D. Tex. Aug. 16, 2005) (citing *Johnson*, 110 F.3d at 306).  For example, in *Clayton*, a high school student alleged that his school administered corporal punishment in a gender-biased manner and that male students were disproportionately punished.  *Id*. at *298.  Further, the student argued that this disparate impact stemmed from an "institutionalized bias" that male students misbehaved more frequently than female students.  *Id*. The student also asserted that a school official made a discriminatory comment about male students in the newspaper.  The court rejected the student's claim:  "[G]iven the discretionary nature of the school district's corporal-punishment policy, there is no allegation that [the plaintiff] or any other male student was subject to corporal punishment because of a biased belief that troublesome boys *should* be punished more and therefore that school officials use gender as an invidious criterion for determining who should be paddled."  *Id*. (emphasis in original).  In this case, A.M. does not allege any *facts* indicating that campus administrators used race or religion as invidious criteria for determining who should be suspended.

Finally, the Plaintiff cannot base his claim on discriminatory remarks allegedly aimed at A.M. by other students.  (ECF No. 1 ¶ 42.)  Plaintiffs in a Section 1983 case must show that their injuries were caused by state actors acting under color of state law.  *See Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997).  A.M.'s classmates are not state actors, and Irving ISD cannot

be held liable for their misbehavior.  Furthermore, the use of a racial epithet without other harassment does not constitute an equal protection violation.  *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004).  Additionally, there are no allegations that the incidents were reported to campus officials and those campus officials responded in a discriminatory manner. *Compare Priester*, 354 F.3d at 424 ("[Plaintiff] presents no evidence establishing that the alleged racial harassment went unpunished while other types of misconduct was punished or that the school did not document the racial harassment in its records").

Because the Plaintiff has not described a violation of the Equal Protection Clause, the Court may dismiss the Section 1983 claims without further analysis.  *See Becerra,* 105 F.3d at 1047-48; *Bustos v. Martini Club Inc.*, 599 F.3d 458, 467 (5th Cir. 2010) ("Since the Officers did not violate [plaintiff]'s constitutional rights, neither did the City").

### C.      Plaintiff does not state a claim for entity liability.

Although the Court may dismiss this claim on the ground that there are no facts giving rise to any inference of intentional discrimination against A.M. based on his membership in a protected class, dismissal also is warranted under *Monell*.

For municipal liability to attach, a Section 1983 plaintiff must allege not simply a decision, but a "'decision by the city itself to violate the Constitution.'" *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 754-55, 760 (5th Cir. 1993) ("The Board's 'policy' may have produced or caused the constitutional violation but, unlike the policymaker's actions in *Monell* and *Pembaur*, it is not itself unconstitutional…").  Here, the Plaintiff does not contend that Irving ISD's Board of Trustees maintained an *actual* policy of directing employees to suspend students on the basis of their race or religion.  Rather, Plaintiff believes that there is a "pattern of discrimination" based on student discipline statistics.  (ECF No. 1 ¶¶ 75-78.)  The Plaintiff

alleges that the board was "aware" of the disparity and that it responded with "inaction."  He alleges that this "pattern" led to the "over-discipline of [A.M.]."  (*Id.* ¶ 77.)

A pattern requires "similarity and specificity."  *Peterson*, 588 F.3d at 851.  The plaintiff cannot simply point to a collection of "any and all 'bad' or unwise acts but rather must point to the specific violation in question."  *Id.* (citation omitted).  Here, although Plaintiff refers to statistics that may suggest a racial disparity in discipline *in general*, there are no specific factual allegations of equal protection violations against students.  The information that Plaintiff cites does not purport to show the occurrence of discrimination or even complaints about discrimination.  *Cf. Valle v. City of Houston*, 613 F.3d 536, 548 (5th Cir. 2010) (although the plaintiff identified prior instances of the police shooting unarmed mentally ill people, such evidence merely showed that prior shootings had occurred and did not establish a pattern of constitutional violations involving excessive force).  Further, because the data cited is limited to race, it says nothing about discrimination on the basis of religion and, thus, lends no support to Plaintiff's theory of liability.

The Plaintiff's pleading also erroneously conflates a "pattern" with a custom or practice.  Although a "pattern" might evince a custom or practice, a pattern is neither.  It is incumbent upon the plaintiff to articulate the specific custom or practice that led to the alleged pattern of unconstitutional conduct.  *See generally Spiller*, 130 F.3d at 167 (conclusory assertions are insufficient to state a claim); *Birabil v. Martinez*, Civ. Action No. 3:15-cv-2255-M, 2016 WL 4402259 (N.D. Tex. July 7, 2016).  Here, Plaintiff has not identified a specific custom, policy, or practice of Irving ISD's Board, nor has he alleged that the custom, policy, or practice was the "moving force" that caused A.M.'s alleged injury.  For example, in *Birabil*, the plaintiffs in an excessive force/false arrest case alleged that the officers manufactured fraudulent criminal

charges.   The plaintiffs alleged that the city had a policy or custom of enabling or training officers to cover up illegal acts with false statements.   However, the plaintiffs failed to describe any specific policy or custom that was the "moving force" behind their injury.   They merely claimed that the City of Dallas "had a policy or custom in place that *enabled* its Police Department's agents and employees to act with deliberate indifference."   *Id.* at *6 (emphasis in original).   Here, A.M.'s allegation is equally anemic, claiming that Irving ISD's alleged pattern "led directly" to the "over-discipline of [A.M.] for showing off his home-made clock-in-a-pencil-box to his teachers."   (ECF No. 1 ¶ 77.)   A.M.'s allegations do not describe a policy or support causation—*i.e.*, that a *specific* policy or practice actually *caused* the discipline of A.M. because of his membership in a protected class.   *See Birabil,* 2016 WL 4402259, at *6 (no facts alleged in support of causation that would raise plaintiffs' right to relief above the speculative level).

The Plaintiff also alleges that a school board member expressed a "discriminatory attitude" toward Spanish-speakers and that this board member encouraged an investigation into alleged Islamic bias in the curriculum.   (ECF No. 1 ¶ 31.)   These allegations do not plausibly demonstrate an intent by Irving ISD to suspend students from school simply because they are Muslim or non-white.   Moreover, a plaintiff cannot take different types of alleged conduct to cobble together a single policy.   Under Section 1983, the policies or customs must be "disaggregated."   *Piotrowski*, 237 F.3d at 581.   Further, the alleged statements or beliefs of a single board member do not establish unlawful intent to discriminate by the board as a body corporate.   *See, e.g., Clayton*, 560 Fed. App'x at *298 ("that one school official believes this [view] does not plausibly demonstrate that other school officials … believe the same").   Additionally, Plaintiff's assertion that other members of the board "censured" the board member

who made the alleged comments undercuts Plaintiff's argument that the board as a whole supported discrimination on the basis of race or religion.  (ECF No. 1 ¶ 32.)

Finally, Plaintiff offers no facts or plausible legal theory that would impose liability on the Irving ISD board of trustees for the acts or decisions of the City of Irving police, a separate and independent police agency.   When an alleged constitutional deprivation involves two different state actors, one must look to state law to determine how government functions are distributed.  *See Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 464 (5th Cir. 2003).  In this case, under Texas law, a school board and its high school principals do not have the power to arrest or to charge a student with a crime.  *See* TEX. EDUC. CODE §§ 11.1511, 11.202.  Police officers, not high school principals, have the authority to arrest.  *See* TEX. CODE. CRIM. P., arts. 2.13, 14.01, 14.03.[7]  A.M. offers no facts indicating that Irving ISD caused the decision to arrest and charge the student or that it maintained an unconstitutional custom, policy, or practice that was the moving force that caused the arrest.

For similar reasons, Irving ISD cannot be held "jointly and severally liable" along with the City.  (ECF No. 1 ¶ 108.)  The Plaintiff offers no facts in support of such a claim, which requires proof "that each defendant acted in concert to 'produce a single, indivisible injury.'" *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 627 (N.D. Tex. 2007) (quoting *Harper v. Albert*, 400 F.3d 1052, 1061–62 (7th Cir. 2005)); *see also Dean v. Gladney*, 621 F.2d 1331, 1339 (5th Cir. 1980) (rejecting joint and several liability because discrete injuries could be apportioned with reasonable certainty to individual police officers).  Furthermore, the claims and theories against the defendants are completely different.   Plaintiff has sued Irving ISD and Daniel Cummings for race and religion discrimination under the Equal Protection Clause and Title VI,

---

[7] Although a school board is authorized to operate a police force and "commission peace officers," see TEX. EDUC. CODE § 37.081, Irving ISD does not maintain its own police force, and there are no allegations to the contrary in the lawsuit.

while the claims against the City are brought under the Fourth and Fifth Amendment and relate to A.M.'s interrogation and arrest. These claims are distinct, are based on discrete facts, and involved different state actors. Because the complaint does not allege facts in support of a plausible theory of joint and several liability, dismissal is warranted.

In sum, to state a Section 1983 claim, A.M. must show that he was subjected to unequal treatment based on a protected class. However, no facts support this element or give rise to a reasonable inference of unlawful discrimination against A.M. Likewise, Plaintiff's complaint fails to contain facts sufficient to support entity liability under Section 1983. Although Plaintiff points to raw statistical data regarding discipline and events in the larger community, there are no facts that suggest that Irving ISD's final policymaker—the board of trustees—knew about, and sanctioned, a specific policy, practice, or custom that would cause campus officials to discipline a student because of his or race or religion. The claims should be dismissed.

## MOTION TO STRIKE

Irving ISD urges the Court to order the Plaintiff to strike inflammatory, irrelevant, and prejudicial material from the Complaint under Rule 8 and Rule 12(f). Rule 8 requires plaintiffs to file a "simple, concise and direct" complaint that contains a "short and plain statement of the claim." FED. R. CIV. P. 8. When a plaintiff submits an unnecessarily long complaint, a court may order the plaintiff to comply with Rule 8. *See Cesarani v. Graham,* 25 F.3d 1044, at *2 (5th Cir. 1994); *Harris v. U.S. Dep't of Justice*, 680 F.2d 1109, 1111 (5th Cir. 1982). Similarly, Rule 12(f) permits the court to strike "immaterial" and "impertinent" material from a complaint. FED. R. CIV. P. 12(f).

In this case, Plaintiff, through his father, has filed a 35-page lawsuit containing several pages of extraneous statements and legal argument. Pages 2-4 of the Complaint purport to

provide a "history" of immigration and discrimination in the United States, beginning with the English passing of laws to prevent the coming of the Quakers and the arrival of Dutch warships in 1619.  (ECF No. 1 ¶¶ 7-8.)  The Complaint references profanity-laden messages sent to third parties and actions taken by other governmental agencies.  (*Id.* ¶¶ 10-12, 105.)  It purports to give a history lesson dating back to the Declaration of Independence.  (*Id.* ¶ 73.)  The Complaint concludes with quotations attributed to Abraham Lincoln, John F. Kennedy, and Lyndon Johnson.  (*Id.* ¶¶ 96-97, 110.)  These allegations are irrelevant and appear designed to prejudicially link Principal Cummings to incidents at other times and in other places.  Plaintiffs "must not include any preambles, introductions, argument, speeches, explanations, stories, griping, vouching, evidence, attempts to negate possible defenses, summaries, and the like." *Edwards v. High Desert State Prison*, No. 2:10–cv–3461, 2011 WL 1135910, at *2 (E.D. Cal. Mar. 25, 2011) (citing *McHenry v. Renne*, 84 F.3d 1172, 1177-78 (9th Cir. 1996)). Instead, "[t]he court (and defendant) should be able to read and understand plaintiff's pleading within minutes." *Id*.  A complaint that is "written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint."  *McHenry*, 84 F.3d at 1180.  Should the Court retain this case on its docket, then Irving ISD urges the Court to order the Plaintiff to file a concise pleading that omits extraneous and inflammatory material.

## CONCLUSION

The Plaintiff has failed to state a claim for which relief can be granted and thus the claims against Irving ISD should be dismissed.  Should the Court decline to dismiss Plaintiff's claims in their entirety, the Court should strike the extraneous and irrelevant assertions in the Complaint.

25

Respectfully submitted,

/s/Kathryn E. Long
klong@thompsonhorton.com
State Bar No. 24041679

Carlos G. Lopez
clopez@thompsonhorton.com
State Bar No. 12562953

**THOMPSON & HORTON LLP**
Ross Tower
500 North Akard Street, Suite 2550
Dallas, Texas  75201
(972) 853-5115 – Telephone
(972) 692-8334 – Facsimile

**OF COUNSEL:**
Melisa E. Meyler
mmeyler@thompsonhorton.com
State Bar No. 24090122

**THOMPSON & HORTON LLP**
3200 Southwest Freeway, Suite 2000
Houston, Texas  77027
(713) 554-6767 – Telephone
(713) 583-8884 – Facsimile

**ATTORNEYS FOR DEFENDANT
IRVING INDEPENDENT SCHOOL DISTRICT**

26

## CERTIFICATE OF CONFERENCE

I hereby certify that, as counsel for Defendant Irving Independent School District, I sent an e-mail on October 9, 2016, to confer with counsel for Plaintiff regarding the substance of the Motion to Strike and Brief in Support.  On October 11, 2016, I corresponded with Plaintiff's counsel regarding the relief requested in the Motion to Strike.  Plaintiff's counsel agreed to remove paragraphs 7-8 from the Complaint, but could not agree to exclude the other paragraphs Defendant seeks to strike in its motion.  Thus, the Motion to Strike is opposed.


/s/ Kathryn E. Long
Kathryn E. Long


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Dismiss and Motion to Strike and Brief in Support has been forwarded to counsel of record for Plaintiff on October 11, 2016, via the Court's electronic service system properly addressed as follows:

Susan Hutchison
509 Pecan St., Suite 201
Fort Worth, Texas 76102
hutch@hsjustice.com


/s/ Melisa E. Meyler
Melisa E. Meyler

855266_6
093990.000002

27